## THE STATE v. TAYLOR, Appellant.

**Division Two, February 21, 1905.**

1. **CONFLICT OF STATUTES: Secs. 1987 and 1988, R. S. 1899: Latter Prevails.** Section 1987, Revised Statutes 1899, making the willful and malicious wounding or maiming of any horse, etc., a felony, and section 1988, Revised Statutes 1899, making the willful, malicious or cruel maiming or wounding of any horse, etc., a misdemeanor, are in irreconcilable conflict, and under the settled rules of statutory construction the latter in position (sec. 1988) must prevail. And an analysis of the history and origin of these two sections clearly indicates that the Legislature, by the revision of 1879, where the sections first appear in their present form, intended to make the willful and malicious wounding of a horse simply a misdemeanor, and thereby to repeal so much of section 1987 as undertakes to make the commission of the same acts defined by the same terms a felony. Section 1987 is, therefore, inoperative so far as it makes the maiming or wounding of a horse a felony, and that offense is, consequently, a misdemeanor.

2. ———: ———: **Sec. 1987, R. S. 1899, Operative In Part.** So much of section 1987, Revised Statutes 1899, as makes the willful and malicious killing of a horse a felony, is not in conflict with the section immediately following, and that part of section 1987 is, therefore, operative.

3. **INFORMATION: Burglary In Second Degree: Malicious Wounding of Horse.** To constitute burglary in the second degree, there must be a burglarious breaking into a building, etc., with intent to steal "or commit a felony therein." The willful and malicious wounding or maiming of a horse is not a felony, but only a misdemeanor. Therefore, an information which charges defendant with breaking into a building with the intent to willfully and maliciously wound and maim a horse, does not charge burglary in the second degree, but only a misdemeanor.

4. ———: **Use of Word "Feloniously."** The mere use of the term "feloniously" in an information does not make the offense a felony. In order to constitute an offense a felony there must be a valid and existing law, making the commission of such act that grade of offense.

Appeal from Scotland Circuit Court.—*Hon. E. R. Mc-Kee*, Judge.

REVERSED AND REMANDED.

*Smoot, Boyd & Smoot* for appellant.

(1)   It is necessary in this case to show two intents—the intent to commit burglary, and the ulterior intent to commit a felony. 1 Bishop, Cr. Law (4 Ed.), secs. 427, 667; Roscoe's Crim. Evidence (6 Am. Ed.), 345; 2 Am. and Eng. Ency. Law (1 Ed.), 690; State v. Crawford, 46 L. R. A. 312. And if the intent at the time of the breaking was only to commit a misdemeanor, defendant cannot be held for burglary, even though a felony should be committed therein. Com. v. Newell, 7 Mass. 247; Rex v. Dobb, 2 East P. C. 513; 1 Hale P. C. 561; 2 East P. C. 509; State v. Cooper, 16 Vt. 551; Com. v. Taylor, 5 Binn. (Pa.) 281; Hackett v. Commonwealth, 15 Pa. St. 95. (2)   If the defendant broke in the stall and did not at the time of breaking in have the intent of committing a felony, he cannot be held guilty of burglary. Rex v. Dobb, 2 East P. C. 513; Com. v. Newell, 7 Mass. 247; Lowder v. State (63 Ala. 143), 35 Am. Rep. 12. Hence, the court should have given instructions 4 and 5 asked by the defendant. If his intent was to commit a misdemeanor, he would not be guilty of burglary. Secs. 1988, 1987 and 1886, R. S. 1899. Both intents—to commit a burglary and to commit a felony—must accompany each and every act necessary to constitute the crime. State v. Hayes, 105 Mo. 81; Bishop's Crim. Law (4 Ed.), sec. 112.

*Edward C. Crow,* Attorney-General, and *Sam B. Jeffries,* Assistant Attorney-General, for the State.

The willful and malicious killing, maiming or wounding of any horse constitutes a felony under the statute and with sections 1987 and 1988, Revised Statutes 1899, taken together, we have the authority of law for the filing of this information and the prosecution of defendant thereunder. The information charges the

commission of a crime, and no error was committed by the trial court in overruling the motion to quash.

FOX, J.—On the fifteenth day of November, 1902, John M. Doran, prosecuting attorney of Scotland county, filed an information against John Taylor, charging him with burglary, in that he feloniously and burglariously broke into and entered a building of one D. A. Frazee, the same being used and occupied by the said Frazee as a stable, by breaking through the side of said stable, the same being a building in which divers goods, wares, merchandise and valuable things were then and there kept and deposited, with intent, a certain horse then and there being in said stable, which said horse was the property of said Frazee, feloniously, willfully and maliciously to cut, wound and maim. The information is sworn to by D. A. Frazee, the prosecuting witness.

At the special December term, 1902, of the circuit court of Scotland county, on the fifteenth day of said month, the defendant by his attorneys filed a motion to quash the information. This was overruled and defendant thereupon entered a plea of not guilty. On the seventeenth day of February, 1903, defendant was placed upon trial and by a jury found guilty as charged, and his punishment assessed at imprisonment in the penitentiary for a term of three years. Unsuccessful in his motions for a new trial and in arrest of judgment, the defendant brings the case to this court on appeal.

The information, which was duly verified and upon which this judgment of conviction is based, is as follows:

"John M. Doran, prosecuting attorney within and for Scotland county, State of Missouri, upon his oath of office informs the court that John Taylor, on the eleventh day of November, 1902, at the county of Scotland and State of Missouri, did feloniously and burg-

lariously break into and enter a building of one D. A. Frazee, there situate, the same being used and occupied by the said D. A. Frazee as a stable, by breaking through the side of said building, the same being a building in which divers goods, wares, merchandise and valuable things were then and there kept and deposited, with intent, a certain horse then and there being in said stable, which horse was the property of the said D. A. Frazee, feloniously, willfully and maliciously to cut, wound and maim, against the peace and dignity of the State.''

Defendant filed a motion to quash the information, which was by the court overruled, and the trial proceeded.

For the purpose of determining the legal propositions involved in this case, it is only necessary to state that the facts as shown by the State tended to prove the charge of the breaking into the building in which the horse was kept, and that there was in the building, at the time of such breaking, blankets, halter and some feed. The testimony of the State further tended to show that the defendant wounded the front ankles of the horse of the prosecuting witness, Frazee. The defendant testified, and denied the breaking into the building, as well as the wounding of the horse.

At the close of the evidence the court instructed the jury, and they returned a verdict of guilty, and, as before stated, defendant's punishment was fixed at three years in the penitentiary.

Defendant filed the following motion in arrest of judgment:

''Now comes the defendant and moves the court to arrest the judgment rendered in said cause for the following reasons:

''1st. Because the information does not state facts sufficient to constitute a crime against the defendant.

''2nd. Because upon the whole record the judgment is erroneous and void.

"3rd. Because the court erred in not sustaining a demurrer to the information filed by the defendant.

"4th. Because the court erred in not sustaining the defendant's motion for a new trial.

"5th. Because the verdict of the jury was not authorized by the record or the pleadings in the cause.

"6th. Because upon the whole record the judgment and verdict is without warrant or authority of law."

The cause is now by this appeal presented to this court for consideration.

### OPINION.

The vital and by far the most important proposition presented by this record is the one in which the validity or correctness of the information is challenged.

This challenge is embraced and asserted in the first and sixth grounds of the motion in arrest of judgment, as follows:

"First. Because the information does not state facts sufficient to constitute a crime against the defendant.

"Sixth. Because upon the whole record the judgment and verdict is without warrant or authority of law."

The information in this case is predicated upon section 1886, Revised Statutes 1899, which provides:

"Every person who shall be convicted of breaking and entering any building, the breaking and entering of which shall not be declared by any statute of this State to be burglary in the first degree, or any booth or tent, or any boat or vessel or railroad car in which there shall be at the time any human being or any goods, wares, merchandise or other valuable thing kept or deposited, with intent to steal or commit any felony therein, shall, on conviction, be adjudged guilty of burglary in the second degree."

It will be observed that the essential elements of the offense provided by that section are, first, *there must be a breaking into a building of the character mentioned in the statute;* second, such breaking must be with the intent to steal or commit a *felony.*

The information charges that the defendant broke into and entered the building with the intent *feloniously, willfully and maliciously* to cut, wound and maim a certain horse, the property of D. A. Frazee. This confronts us with this proposition: Is the willful and malicious wounding or maiming of a horse, under the laws of this State, a felony? If it is, the information properly charges burglary in the second degree, as defined by section 1886, supra; if it is not, and simply constitutes a misdemeanor, then there is no burglary charged as contemplated by that section. It will be noticed that the mere use of the term feloniously in charging the offense does not make it a felony; that term is simply a technical one, which is indispensable in informations and indictments in a charge of a felony, but in order to constitute an act a felony there must be a valid and existing law, making the commission of such act that grade of offense.

The section of the statute upon which the State must rest the correctness of the charge of the intent to commit a felony, is 1987, Revised Statutes 1899. It provides that:

"Every person who shall willfully and maliciously kill, maim or wound any horse, mare, colt, mule, ass or neat or horned cattle of another, shall, upon conviction, be punished by imprisonment in the penitentiary not exceeding three years, or by imprisonment in the county jail not less than six months, or by a fine of not less than fifty dollars, or by both such fine and imprisonment."

It must be conceded that if this section ended the legislation on the subject of maliciously and willfully maiming or wounding a horse, and stood alone as the

expression of the will of the Legislature defining the offense, there could be no question or dispute that the *willful* and *malicious* maiming or wounding of a horse would constitute a felony; but the difficulty with which we are met in the solution of this proposition is that section 1987, supra, is not the only legislation upon this subject. Section 1988, Revised Statutes 1899, provides that:

"Every person who shall willfully and maliciously or cruelly maim, wound, beat or torture any horse, ox or other cattle, whether belonging to himself or another, shall be deemed guilty of a misdemeanor."

It is clear under this section that the *willful and malicious* maiming or wounding of a horse of another is a misdemeanor.

As applicable to the charge in the information in this cause, sections 1987 and 1988 are identical and are irreconcilably in conflict. It will be noticed that in section 1988 it is apparent by its terms there are two subdivisions classifying the misdemeanor. It provides that every person who shall *willfully and maliciously or* cruelly maim, wound, etc., etc., shall be guilty of a misdemeanor.

Under the first subdivision of this section (1988) it will be observed that the essential elements of the offense, which is declared a misdemeanor, is the *willful* and *malicious* maiming or wounding of a horse. Under the second subdivision, the only essential element of the offense is that of *cruelly* maiming or wounding a horse. In other words, every person who shall willfully and maliciously, *or* who shall *cruelly* maim or wound a horse, is only guilty under this section of a misdemeanor.

The willful and malicious maiming or wounding of a horse, which is a misdemeanor under section 1988, is precisely the same offense defined by the same terms as that created by section 1987, which makes the commission of the same act a felony.

So far as the provisions of section 1987 are applicable to the *willful* and *malicious* killing of a horse, there is no difficulty in distinguishing the grades of the offense, and as to that portion of the section there is no conflict. The conflict arises in the provisions of that section which makes the *willful and malicious* maiming or wounding of a horse a felony, when the same act by section 1988 is made a misdemeanor.

These *two sections,* so far as they are applicable to the *willful* and *malicious* maiming or wounding of a horse, cannot both stand as valid and existing laws. While it is clearly the duty of the court, in construing two sections upon the same subject defining criminal offenses, to so construe them as to bring them in harmony, and make them both effective and operative, to the end that a remedy may be afforded for the evil sought to be suppressed, it is equally clear that, where they are irreconcilably in conflict, one or the other must fall.

It will not be supposed that the lawmaking power intended to enact or continue in force laws which are contradictions and repugnant to each other. [Sutherland, Constr. of Statutes, secs. 247 and 268.] As applicable to this proposition, Endlich on Interpretation of Statutes, sec. 238, very clearly states the rule. He says: "Where a statute alters the quality and incidents of an offense, as by making that which was a felony merely a misdemeanor, it would be construed as impliedly repealing the old law."

This leads us to an examination of the origin and history of these two conflicting sections. Substantially, the acts denounced by section 1987, supra, first made their appearance in the laws of Missouri in 1825. It was then provided that the wanton, willful and malicious killing, wounding or destruction of a horse, the property of another, was a misdemeanor. [R. S. 1825, sec. 83, p. 309.]

In the revision of 1835 it was provided by section

54, page 181, that: "If any person shall willfully and maliciously kill, maim or wound any cattle of another, he shall, on conviction, be punished as in the next preceding section is provided."

The preceding section referred to, as fixing the punishment, provided that the punishment should be by imprisonment in the penitentiary or by fine and imprisonment in the county jail. In other words, the punishment fixed would classify the offense defined as a felony.

Section 54, Revised Statutes 1835, is substantially the same as section 1987, the present statute upon that subject, except it does not classify the animals as is done in the present statute by designating horses, mares, etc., etc.

The willful and malicious killing or wounding of a horse, under the statute of 1835, was a felony. It was ruled by this court that horses and mares were embraced within the term *cattle*. [State v. Hambleton, 22 Mo. 452; State v. Clifton, 24 Mo. 376.] Thus stood the law under this section in the revisions of 1845, 1855 and under the General Statutes of 1865. In 1877 this section was amended, but the amendment made no change in defining the offense, nor in the grade of it, but merely changed the graded punishment, relating to fine and imprisonment in the county jail. In the revision of 1879, this section was amended and revised, and such revision of 1879 remained unchanged either by the revision of '89 or '99, and now stands as section 1987, Revised Statutes 1899, the provisions of which have herein been indicated.

The subject-matter of section 1988 made its appearance in the laws of this State in 1845 (Revised Statutes 1845, sec. 38, p. 406). It was there provided that: "Every person who shall maliciously and cruelly maim, beat, or torture any horse, ox, or other cattle, whether belonging to himself or another, shall, on conviction, be

adjudged guilty of a misdemeanor, and fined not exceeding fifty dollars.''

It will be noticed that under that section, which created a misdemeanor, the elements of the offense consisted in *maliciously and cruelly maiming,* etc., etc., any horse; there was substantially no change in this section in the revisions of 1855, or the General Statutes of 1865, except the term *wound* preceded maim, so as to read ''maliciously and cruelly wound, maim,'' etc., etc.

Thus stood the provisions of this section until in the revision of 1879 it was amended and revised; and was not changed either by the revision of 1889 or 1899, and now stands in the form as heretofore indicated.

It is clear that the provisions of these sections applicable to the maiming or wounding of a horse, prior to the revision of 1879, could be readily distinguished and appropriately harmonized. In the one, defining the misdemeanor, the offense consisted of the *malicious* and *cruel* maiming or wounding of a horse; in the other, defining the *felony,* it was the *willful* and *malicious* maiming or wounding of the animal.

It is apparent that the essential elements of the two offenses, as the statutes stood, were clearly distinguishable, but not so under the statute now in force. As applicable to the maiming or wounding of a horse, the essential elements of the offense as a felony, defined by section 1987, is identical with those defining the offense as a misdemeanor by section 1988. Could the act of maiming or wounding of a horse the property of another, under the first subdivision of section 1988, which is a misdemeanor, be charged in an indictment or information in any form different to the charge of a felony, under section 1987? We think it is clear that it could not, except the term *feloniously* would precede willfully and maliciously.

But that term cannot change the grade of the of-

fense. The offense must be graded by the terms of the statute, and then to classify the offense, in charging the commission of an act which is made a felony by the statute, the term *feloniously* must be used.

The repugnancy of these two sections being made apparent and the conflict being irreconcilable, leads to the inquiry as to which one of them must prevail.

Both of these sections appear in their present form for the first time in the revision of 1879, treating them as enactments by a revised bill. At the same time, section 1988 is later in position, and, under the well-settled rule of construction, must prevail. The law on this subject is very aptly and clearly stated in 1 Sutherland, Const. of Statutes (2 Ed.), sec. 280:

"Where there is an irreconcilable conflict between different sections or parts of the same statute the last words stand, and those which are in conflict with them, so far as there is a conflict, are repealed; that is, the part of a statute later in position in the same act or section is deemed later in time, and prevails over repugnant parts occurring before, though enacted and to take effect at the same time. This rule is applicable where no reasonable construction will harmonize the parts. It is presumed that each part of a statute is intended to co-act with every other part; that no part is intended to antagonize the general purpose of the enactment. To ascertain the legislative intent every part of an act, and other acts *in pari materia,* are to be considered. One part of an act may restrict another part—an early section a later, and vice versa; but if one part is so out of line with other parts and the general purpose of the act that it can only operate by wholly neutralizing some other part, then the latter provision is supreme as expressing the latest will of the lawmaker."

To the same effect it is announced by Mr. Endlich on the Interpretation of Statutes, sec. 183, that:

"Where, in a statute, there are several clauses

which present, as compared with each other, an irre-concilable conflict, the one last in order of date or local position must, in accordance with this rule, pre-vail, and the others be deemed abrogated to the extent of such repugnancy; whether the conflicting clauses be sections of the same act, or merely portions of the same section."

Aside from this application of this rule of con-struction and interpretation of statutes, an analysis of the history and origin of the two sections clearly in-dicates that the Legislature by the revision of 1879, sec-tion 1988, intended to make the *willful and malicious* maiming or wounding of a horse simply a misdemean-or, and thereby repeal so much of section 1987 as under-takes to make the commission of the same acts defined by the same terms a felony, which is repugnant to the provisions of section 1988.

The change as made by section 1988 in 1879, in re-spect to the offenses defined, is the only substantial alteration made on this subject since the revision of 1835; hence, it must be treated as the last expression of the legislative will on the subject, and that it was simply a mistake or oversight in the revision of 1879 in not omitting "maim or wound" from section 1987 so as to conform to the provisions of section 1988.

We have, in addition to what has been said in the discussion of this proposition, a recognition by this court in State v. Nicholson, 116 Mo. 522, of the cor-rectness of the conclusion herein reached.

We have now before us a copy of the indictment in that case; it charged the defendant, in the language of section 3620, Revised Statutes 1889, which is the same as section 1987, Revised Statutes 1899, with "feloniously, willfully and maliciously maiming a cer-tain mare, the property of one W. S. Terault." The defendant was convicted, and prosecuted his appeal to this court. Sherwood, J., held that the indictment simply charged a misdemeanor under section 3621, Re-

vised Statutes 1889 (which is now section 1988, R. S. 1899), and directed the transfer of the cause to the St. Louis Court of Appeals, and said cause was finally reluctantly disposed of by that court. [State v. Nicholson, 56 Mo. App. 412.]

While the learned judge, in the opinion directing the transfer of said cause, did not assign any reasons for the conclusions reached, it is apparent that the only reason that could be assigned was that the portion of section 3620, supra, which made the willful and malicious maiming or wounding of a horse or mare a felony, was inoperative and not in force by reason of the later expression of the Legislature, making the commission of those acts a misdemeanor.

Having reached the conclusions as herein indicated, upon this vital proposition involved in this record, it follows that the information in this cause does not charge burglary in the second degree, as contemplated by section 1886, for the reason that the offense with which defendant was charged with intending to commit, after the breaking and entering the building, is not a felony under the laws of this State.

The conclusions reached upon this proposition render it unnecessary to express an opinion upon the remaining questions presented by this record.

The judgment is reversed and the cause remanded. All concur.